Antwon BANKSTON *v.* STATE of Arkansas

CA CR 02-1008                                             117 S.W.3d 623

Court of Appeals of Arkansas
Division IV
Opinion delivered September 10, 2003

*Joe Kelly Hardin*, for appellant.

*Mike Beebe,* Att'y Gen., by: *David R. Raupp,* Sr. Ass't Att'y Gen., for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellant, Antwon Bankston, was found guilty by a Saline County Circuit Court jury of the offenses of incest and rape. He was sentenced to the Arkansas Department of Correction for a period of six years on the incest conviction and ten years on the rape conviction, with the sentences to be served concurrently. On appeal, appellant argues that the trial judge erred in reading jury instruction AMCI 2d 8102 to the jury and in denying his motion for a mistrial. We affirm.

Because appellant does not contest the sufficiency of the evidence, it is not necessary to recount the testimony of the witnesses. Both the State and the defense presented their cases and, after the appropriate motions, instructions to the jury, and closing arguments, the jury retired to deliberate at 3:07 p.m. Two hours and twenty minutes later, the jury foreman informed the trial judge that the jury had been deadlocked eight to four for a little over an hour. At that time, the State requested in chambers that the trial judge give the jury AMCI 2d 8102, commonly known as the "dynamite" instruction. Counsel for appellant objected, arguing that the foreman had said that the vote was not likely to change, that two of the jurors had come out of the courtroom in a display of anger when they had been told to go back and continue deliberations,[1] and that by giving the dynamite instruction, the court was trying to press some members of the jury into changing their positions. Over appellant's objection, the trial judge read AMCI 2d 8102:

> It is in the interest of the State of Arkansas and of the Defendant for you to reach an agreement in this case, if at all possible. A hung jury means a continuation of the case and the delay in the administration of justice. You should consider that this case will have to be decided by some jury and in all probability upon the same testimony and evidence. It is unlikely that the case will ever be submitted to 12 people more intelligent, more impartial, or more competent to

---

[1] Although appellant's counsel makes this argument in an objection prior to the giving of the "dynamite" instruction, there is nothing contained in the abstract or the record indicating that the jury had been instructed to continue its deliberations prior to AMCI 2d 8102 being read to them.

decide it. Under your oath as Jurors, you have obligated yourselves to render verdicts in accordance with the law and the evidence. In your deliberations, you should weigh and discuss the evidence and make every reasonable effort to harmonize your individual views on the merits of the case. Each of you should give due consideration to the views and opinions of other Jurors who disagree with your views and opinions. No Juror should surrender his sincere beliefs in order to reach a verdict. To the contrary, the verdict should be the result of each Juror's free and voluntary opinion. By what I have said as to the importance of the Jury reaching a verdict, I do not intend to suggest or require that you surrender your conscientious conviction, only that each of you make every sincere effort to reach a proper verdict. Therefore, I request the Jury to retire for further deliberation for a reasonable time in an attempt to reach a verdict, if you will, please.

After the trial judge had given the instruction and the jury had returned to the jury room for further deliberations, appellant's counsel again objected to the instruction, stating that two of the jurors leaving the jury room expressed anger at being told to report back to the jury room for further deliberations. The prosecutor replied that what was expressed to the trial judge at the time the jurors left the room was a request for an additional break; that the jury was properly instructed; and that the instruction clearly indicated that there was no intention on the part of the trial court to force any juror to change his or her convictions, only to make a sincere attempt to reach a verdict.

The jury again returned to the jury box with a question for the judge; after discussion with counsel, the trial judge instructed the jury that they had been given all of the instructions and charges that he was permitted to give them. After the jury had retired for further deliberations, appellant's counsel made the following motion:

Your Honor, on behalf of the Defendant, at this point I would move for a mistrial. The Jury went into deliberation at 3:07 p.m. They returned at 5:30 p.m., advised the Court that they were deadlocked at an eight and four split. The Court read them the, quote, dynamite instruction, unquote. Part of that instruction tells them to return and deliberate for a reasonable time. It is now 8:25, two hours and 55 minutes after you told them to consider this for an additional reasonable time. In light of the fact that the first time they

stopped and advised the Court that they were hung was less than two and a half hours, an additional two hours and 55 minutes does constitute a reasonable time, under these circumstances and I'll ask the Court for a mistrial.

The prosecutor responded, "We believe they've reported that they are making progress and they have requested additional time in which to deliberate and at this point it would be premature to, I think, stop such deliberations when it appears that they've already made [progress] in the process." The trial judge, in denying the motion for mistrial, noted that on the two occasions that the jury foreman had come out of the jury room since the jury was given the dynamite instruction, he had indicated both times that some progress was being made. The jury returned at 9:00 p.m. with verdicts of guilty for the offenses of incest and rape and a verdict of not guilty for the offense of sexual abuse in the first degree; each juror was individually polled for his or her verdict on each of the counts.

Appellant first argues that the reading of AMCI 2d 8102 to the jury was premature, improper, and prejudicial. He contends that the instruction forced the jurors to compromise their opinions as to his guilt or innocence, especially after two jurors had openly displayed their anger about being instructed to deliberate further. He also argues that the instruction should not have been given after only two hours and twenty minutes of deliberation.

The use of the "dynamite" instruction has been approved by our supreme court. See Miller v. State, 280 Ark. 551, 660 S.W.2d 163 (1983); Walker v. State, 276 Ark. 434, 637 S.W.2d 528 (1982), cert. denied, 459 U.S. 975 (1982). Such an instruction is not improper if the admonition is given without the trial judge's opinion as to the weight of the evidence, if there is no change in any of the instructions previously given, and if there is no sugges-tion that any juror must yield his convictions to obtain a verdict. Walker, supra. None of these factors were present in the instruction given in the instant case; in fact, the trial judge specifically stated that he did not intend to suggest or require that any juror surrender his or her conviction. Therefore, the giving of the instruction was not improper or prejudicial.

Appellant further asserts that the "dynamite" instruc-tion was given prematurely to the jury. In his brief, he cites Miller, supra, and Walker, supra, in support of his argument. In those cases, the juries deliberated for five hours and four hours, respectively,

before the instruction was given. In this case, appellant argues that two hours and twenty minutes was not a long enough period of time to require the dynamite instruction; therefore, the giving of it was reversible error. We disagree. Appellant's argument overlooks *Davis v. State*, 319 Ark. 460, 892 S.W.2d 472 (1995), in which the "dynamite" instruction was given after only two hours, and our supreme court held that the trial court did not abuse its discretion in denying a mistrial. We cannot say that the giving of the instruction after two hours, and twenty minutes of deliberation was reversible error.

Appellant's second contention on appeal is that the trial court erred in refusing to grant his motion for a mistrial after the jury had still not returned with a verdict almost three hours after being given the "dynamite" instruction. A mistrial is a drastic remedy that should only be employed when there has been an error of such prejudicial magnitude that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *Ward v. State*, 338 Ark. 619, 1 S.W.3d 1 (1999). The decision whether to declare a mistrial due to a jury's inability to reach a verdict is discretionary with the trial court and is not reversed absent an abuse of that discretion. *Davis, supra.*

In the present case, the jury deliberated for two hours and twenty minutes before being given the "dynamite" instruction and returning for further deliberations. Two hours and fifty-five minutes later, appellant requested a mistrial. In denying appellant's motion, the trial judge noted that during both of the times that the jury foreman had left the jury room, he had indicated that the jury was making progress. Approximately thirty-five minutes after appellant's motion for a mistrial, the jury returned with its verdicts. Under these facts, we cannot say that the trial judge's denial of appellant's motion for a mistrial was an abuse of discretion.

Affirmed.

BIRD and VAUGHT, JJ., agree.